Good afternoon, everyone. Welcome to the Illinois Appellate Court First District. We ask that the lawyers who are going to argue the first case to please step up, introduce themselves, and tell us who you represent. Good morning, Your Honors. Thomas Raja on behalf of the Countryside Police Pension Board. Good morning, Your Honor. Steve Keltrop here on behalf of the individual appellants. Good afternoon. Good afternoon, Your Honors. I'm Catherine Thomas and I'm here on behalf of the City of Countryside. Thank you very much, Counsel. Have Counsel for the Pension Board and the retirees reached any agreement about dividing up time? Who's going to go first? Yes, the Pension Board will go first. All right. Yes, we can. All right. Under the Supreme Court rules, each side has 20 minutes for the main argument. The appellant has 10 minutes for rebuttal. We may change that if we have a lot of questions or if the argument becomes repetitive, but there are a lot of issues in this case, so we'll be generous with time. Keep in mind we have a case after this one. Please remember to speak loudly. The microphones don't amplify well, but just are there for recording purposes. Again, please understand we have all read the briefs and are familiar with the facts of the case, so we ask that you devote your time to your strongest arguments. All right. Counsel, you may proceed. Good afternoon again, Your Honors. Thomas Roger on behalf of the Appellant Countryside Police Pension Board. May it please the Court, will you counsel? We're here today, Your Honors, first and foremost, it was in our counterclaim, because the city's not levying a tax for the police pension fund as required by state statute. Section 3-125A requires the city to levy a tax on behalf of the Pension Board, separate and apart, in addition to the general revenues that they already levied. Mr. Roger, since you started with that point, let me ask one of my questions on my list here. You allege in the counterclaim, the Board alleges that, you know, without any caveats, that the city simply is not levying anything or giving you anything. That's not correct, is it? The city is giving you, giving the Board some money, it's just the amount that you're disputing. No, that's not correct, Your Honor. We're not disputing that they're turning over funds to the police pension fund. That's not what this is about. It's about that they're not levying a tax from the citizens of the community, which is required by state statute. Does the Board have an interest in the fact that the money is coming from a tax levy as opposed to some other source? We do. And what is the difference between getting $500,000 of levy money versus $500,000 of sales tax money? I believe it's all through the levy, but first there's an enforcement mechanism in the Pension Code. The Pension Board has a fiduciary responsibility to abide by the Pension Code, which one says, this appellee shall levy a tax for their fund, which they're not doing, so that's first. But the Board is getting an amount of money from the city, is it not? It has every year? It has. Okay. If the city has admitted, they're not turning over the full amount that they're required to, to meet the unfunded liabilities of the fund. But what is required is in dispute because the difference of opinion about what is required stems from whether or not the actuarial calculations must include the higher pensions at issue. Is that correct? It's part of it. Okay. It's part of it. You know, the problem is if the city doesn't turn over the correct amount, as the Board sees it should be, we have no way of enforcing that amount to get the additional monies as the statute provides. It indicates they shall provide specifically for the pension fund and the tax levy, and if they don't... But putting aside the issue of whether the funds are from a tax levy or not, the amount of money that you're claiming the city owes you is simply an increment which represents the actuarial calculation based on whether or not these 11 or 12 people should get a higher pension or the lower pension the city claims they're entitled to. The annual levy amount is not that specific. Okay. What it says is they have to meet the annual unfunded liabilities. Right. And the amount is based on the census of active and retired officers, is it not? Right. And the amount is going to vary based on whether or not you're including particular amounts as part of the retired officer's salary or not. Okay. The city has admittedly said we're not including that amount because we deem it illegal unilaterally, so we're not including it. And admittedly they've said we're not levying a tax. Ms. Paul, the city administrator, said since 2007 we've never separately levied a tax specifically for a police pension fund which is required by the statute. It says share in the statute. It says it's got to be separate and apart from the general tax revenues. They've admitted they're not doing that. And I believe that's where the problem stands as to why we're even here. Historically, in the real world, aren't there a lot of municipalities, or at least some, that because of their demographics and their geography fund the police and fire pension system through non-property tax levy? And I'm thinking Shelburne was famous for it. It never levied a property tax because everything came from Whitfield Mall. Right. And the city of Countryside has a mall as well. And certainly that's great for those municipalities that they could make up any unfunded liability that the tax levy may not cover for the police fund by using general funds. That's perfectly permissible as long as that municipality is levying a tax for the police and fire pension. And I think any municipality that's not is probably, not probably, they are in violation of the law. The statute is very clear on that. And, again, the pension bill has a fiduciary responsibility to follow the statute and ensure that the statute is being followed by the municipality. So we believe we should prevail on the counterclaim. And the circuit court simply got it wrong to dismiss the pension board's claim on that issue because they have to levy a tax for the fund. They're not doing it. And that's been admitted by the city. A second argument then gets to whether or not these individual defendants should receive the salary that was bargained for with the city through the union as part of their pensionable salary. I cite section 3-111A, which is the first thing the pension board does when they're determining a retirement benefit. They see, what does the statute say? We have to follow the statute. And the statute's real clear. They're entitled to salary that either the year prior that they were entitled to or the last day of service, whichever is greater. And that's what the pension board looked to. And they looked to the bargain for exchange between the municipality and the city and the CBA. And what the intent behind that provision was, and that was they would receive an $800 or $850 increase as part of their regular salary, as part of payroll on their last payroll check before they retired. And it was appropriated for as admitted by the city and as admitted by the city attorney pad, which is cited to in the record in my briefs. So that's what the pension fund has an obligation to consider when they're determining what is the appropriate pensionable amount. So they included the $850 on their last payroll, which is what the statute provides for. And admittedly, that is a $10,000 increase to the annual salary and an increase in the pension benefit. But that's what was bargained for in exchange. And we said a lot of case law in the briefs are talking about that's perfectly permissible. Just as a union and a city can bargain away pension benefits, they can also increase benefits beyond what's provided in the statute. Could the union and the city bargain to grant pensions greater than what's in the pension code? Yes. In like a higher percent level, like we'll give you 99% of your last salary. Do you think that that's bargainable? I think it is based on reading of the case law. It may not be fiscally appropriate to do that, but in a case like Countryside or Schaumburg, as you mentioned, where they have increased tax revenues and there's going to be a bargain for exchange where maybe they're giving up post-retiree health care. In this case, they're going to give up, the city's going to save a whole bunch in either health care benefits or potential salaries. I think it's permissible to do. Let's go back to the $800, because the $800 is $800, right? Or $850 or $800? It depends on when they retire, but it's year one. That only clicks in or is activated when everyone agrees that the officer is on the cliff of retirement, on the very last paycheck. Correct. So because of that, there's no way that that $800 or $850 is ever going to be multiplied by 24 and actually earned to the tune of $10,000 by any officer, correct? Correct. They're only going to get the $850 in their pocket. I wouldn't say earned, but they're only going to receive $850 from the municipality, and the municipality is saying, we understand that we're only going to pay you the $850, but we're going to make up that additional salary increase through the tax levy that's going to come in and we're going to fund your pension based on you accepting that lesser amount. So are you saying then that the pension is based, according to the pension code, it should be the actual last year's salary, and in the agreed upon side letter, whether they get the $800 or the $850, that's all they get in that last paycheck. So the $10,000 or $10,000 additional money that they're getting, it's not something that they actually earn. Is that legal? I mean, does the pension code allow you to get pension based on something that you didn't earn in your last year? Well, you set it out there, Justice, first. This wasn't just a side letter that this benefit was based upon. It was a long history of negotiation between the municipality and the union. It started in January of 2002. But even so, I think your question is more narrow than that. That's fine, and I just wanted to make sure that's clear. But it's not that they haven't earned it. They certainly have. They've worked 20 years for the police department in a high-risk occupation. They've turned age 50. This is a longevity benefit that's permissible under the pension code. But how do you know how much it is? I mean, it's $10,000 or it could be $15,000 or it could be $20,000. I mean, how do you pluck a number out of the air and say that this is the longevity benefit to which they're entitled and upon which their last year's pension will be based? How do you come to that number? Just the way the city and the union did here, they negotiated it. They sat down and said $800 equals $10,200 increase to their annual pension benefit. So using that same example, if they decided that they were going to increase that by $100,000, would that make it okay? I mean, I'm trying to figure out what's the basis that makes this fall within the pension code. Say they decided that an officer who'd been on the police force for 40 years or 30 years, whatever it is, and had been a loyal servant, maybe his benefit should be increased by $50,000. Would that work? I mean, you know, I'm trying to see what the connection is. Just because they bargained for it, does that make it fall within compliance of the pension code? That's my question. Before you answer, let me give you my very related hypothetical. All right? Let's forget $850 for two weeks. Let's say the city says we're going to give you $100 for the last hour you serve on the force. All right? And then we're going to multiply it by 24 hours in a day and 365 days a year. And you end up with an $876,000 salary. What's the difference between that and what the $850 side letter does? The pension board would look at what's negotiated and what the statute says. And the statute clearly here says under 111A, which the circuit court completely ignored, it says it's the last year or the last day of pay, whichever is greater. If they broke it down hourly, I would say that's probably in violation of the statute, unless somewhere in the intent of the contract or in the contract, it said we're going to multiply that hourly rate for a full day's pay. But I think it's got to be in compliance with the statute. And to address Justice's question, if it's a $100,000 pay raise, let's say they gave him a $10,000 increase on that last paycheck, and it was intended to be a $100,000 increase, if that's clearly spelled out by the parties and it was understood at the negotiation table and the municipality said, we can fund it, we are rich with money, we have the ability, all these employees earned it and they're entitled to it, it would be legal under the pension code. Would it be fiscally appropriate? Maybe not on the municipality's end. And they'd have to potentially make that up. I don't see that ever happening because they know their obligations under the pension code. But under the strict reading of the law, that would be legalized. I cite to the Barber v. Village of Bensonville case in my brief. I understand it's a second district opinion. But there they say any end-of-career salary increase would be lawfully pensionable as long as it was part of the municipality's ordinance. And then there's another case that says you can bargain for exchange either increased benefits or lesser benefits. Again, as long as it's in compliance with the statute. At the Barber court, they have to go by the intent of the legislature when examining the statute. And as your honors I'm sure are aware, there's now tier two employees under the pension code which says there's an eight-year period that you look at as far as what the pensionable salary should be and that's average. These employees didn't have that. You have to take the pension code, it's a contractual benefit covered by the UNI Constitution to which they're entitled to the bargain or the contract that was provided to them when they were hired on the department. Here when they were hired, Section 3-111A was the law of the land. It still is this statutory benefit right. There is a window where this benefit is going to go away for these employees. You've got tier two employees and you've got people that are going to retire and unfortunately pass away where this benefit should go away. If the city doesn't like the benefit, they've gotten the benefit of the bargain. They gave an $850 increase. Everybody understood what that meant, what 14.3 meant when they bargained for it. There was admissions as the circuit court acknowledged. Most importantly, the mayor, Conrad, was on the negotiating team. He was also on the police committee. He was sitting on the city council when they passed the ordinance approving the increases. And your officers, Bozzi, Moravichek, and Swanson were also on the bargain team and then took the benefit shortly thereafter. Is that also correct?  I know for certain that they did. I know for certain that there's also some hints in the record that some city officials, their intent was to go along with the deal thinking that it would be declared illegal shortly thereafter and only apply to a few officers. That's clearly in the record and we feel that's on clean hands. The city bargained for this increased pension benefit knowing they're getting a substantial bargain for exchange or substantial consideration. They saved upwards of $655,000 when these individuals retired. Now, they've got that savings now and now 12 years later, they're saying, well, we don't like the benefit anymore because we're paying out of general revenues. It's taking away from other things we could do with that money. That's why we're back to they should be levying the tax. But they don't like the benefit anymore so it's like take it away. If you don't like it, bargain it away. And that's what they should have done. That's part of our lack of standing argument. I just want to get through that real quickly. I know my time is somewhat limited. We feel that the lack of standing argument that we put in place should have resulted in the dismissal of this complaint. There's really three arguments with respect to that. One is there's an administrative review period of 35 days with respect to all these benefits. This wasn't a miscalculation by the pension fund. These were legal determinations made when each individual officer retired. The city never sought administrative review of the lion's share of those officers. There was a final two. After they filed the lawsuit in 2012, they did seek administrative review. While we're on that point, it appears there are some administrative review cases out there for some of the later retiring officers. Is that correct? There is. And those are on hold pending this case. That is correct. All right. Those were the ones they filed after the 2012 lawsuit was filed. And we made the arguments here saying you blew the statute of 35 days that sets forth in the police pension code at 3-148. The only case that's cited by the circuit court and by the defense here is that there's a systemic miscalculation. It's the Board of Education case. Matthews, I believe, is the title. That case is entirely distinguishable here. There was a mistake in the calculation that was widespread, meaning they applied a 22 pay period as opposed to a 26. It unfairly inflated pensions unbeknownst to everybody there. We don't have that here. Everyone knew what the longevity benefit was. Every person that retired was actually decided on an individual basis, and the board then made those determinations that should have been administratively reviewed. The court lacked standing. The defense lacked standing. This case should have been dismissed as a result. Also, there was an arbitrator decision that said they didn't present enough evidence, that the arbitrator was going to keep the status quo with respect to longevity. That was then subsequently approved. The CBO subsequently approved, and so was the arbitrator's decision by the municipality. Excuse me. Let me ask you to bring your argument to a close. Okay. I appreciate it. Then the last thing was on the standing issue, there's a five-year statute of limitations on statutory benefits. The city is saying that the pension board violated the statute by providing this benefit, but they didn't bring their lawsuit until 2012. But the pension payments are still being made every month, aren't they? Is there an argument that the statute of limitations runs anew every time they get a payment? Assuming it's illegal. Assuming the payment is illegal. It's from when they don't know what their cause of action accrued. They knew their cause of action, if they thought the benefit was illegal, it was in 2002, possibly in 2004 at the latest, because at that point their city attorney had dealt with the chief that was retiring, and they knew that it was illegal. So to sum up, I'd like to reserve about two minutes. Let me see if the other justices have questions. No. The last thing I'd like to point out before I sum up, Your Honor, is that it's rare that you see the city attorneys admitting that the other party got the case right. And if you look at the opinions of Attorney at Labor, Attorney Nix-Sedwinski, you look at the opinions of their general counsel, Attorney Peck, we have no less than five legal opinions in the record where everyone's saying this is a permissible benefit that the pension board did. And if they don't grant the pensionable salary as was bargained for between the city and the union, that they're violating the law, the pension fund that is. We also have an affidavit from their city attorney in the record where he says everyone knew about the benefit. This wasn't a fork and dagger thing like you see in traditional quote-unquote pension spike cases. It wasn't the mayor doing a sweetheart deal for the chief or anything of that nature. This was well thought out, bargained for over a long period of time, and a permissible benefit under the law. We ask that you reverse the decision of the circuit court. Thank you. Thank you. Mr. Kelso-Turner. Thank you very much, Your Honor. I appreciate you granting me a few minutes here. I know that Mr. Roger had many questions to answer for you. So I want to present the individual defendants. There are 13 individual officers who have been retiring going back all the way to 2002, going forward to the ones that Your Honor had mentioned that are subject to the administrative review proceedings. Let me ask you one housekeeping question, at least one of my housekeeping questions. There was an original group of pensioners who were sued. Yes. And then along the way they filed a counterclaim. There were two separate counterclaims. Two separate counterclaims, yes. It appears from the record that either as to the first or the second, some other pensioners sort of jumped on the ship and joined the club. Yes. But they were never asked to intervene. They were just sort of added into the caption. And I want to make sure that they are, in fact, you are representing them. They are in the case and subject. I do, and it's our understanding that they're in the case. Any of those later individuals were, I believe, added by the municipality, certainly added as part of the administrative review cases. So as people would retire, once this initial case was filed in 2012, the city began filing. Mr. Rogers had filed a motion to dismiss, saying we've got a 35-day statute of limitation. The municipality began filing administrative review cases, challenging those. But actually they'd be, the new people would be third-party counterplaintiffs. They would be, and they would be appropriately listed as third-party counterclaimants or counterplaintiffs because whether or not they were originally defendants on the original litigation matter, they certainly were plaintiffs. I'm sorry. As you say, as they retire, they're added. So are there new people in the pipeline that's going to be added? There are no new members of this class since, as far as I'm aware of, since the judicial determination by Judge Cohen. Let me bounce over to the counterclaim. Sure. Which one? Here's the phrase for you. In the first counterclaim, you raise third-party beneficiary quantum narrow appropriation ordinance and an injunction. Yes. That counterclaim was dismissed with prejudice. Yes. And then you appealed it prematurely because it didn't have 304A. Yes. That appeal was dismissed. Yes. Then a couple years pass, and now we have a second counterclaim from the same folks. Yes. Which raises an entirely different issue, which is the Illinois Constitution Pledging Guarantee Clause. Right. There is legal doctrine out there which says that if you do not replead claims that were dismissed in an original earlier iteration of a complaint, you can't appeal them. All right. The case law says that even though you know they're dismissed, you have to at least footnote them or say, you know, for sake of the record, for sake of preserving them, we are repleting counts 3, 4, 5. You didn't seem to do that at all. All we have is a second counterclaim, which raises an entirely different cause of action. So the question I'm posing is, how do we have any ability to reverse the dismissal of the first counterclaim? Your Honor, that issue was never raised. I don't say you didn't raise it, but I'm raising it. Right. Because it comes up all the time. Right. We're very familiar with it up here. Right. Because we kill a lot of cases based on that doctrine. Your Honor, I don't have an answer for you at the moment. All right. Go ahead, Counsel. Thank you. Regarding that claim, however, the claim that the plaintiffs, the counterplaintiffs, would have in this regard would be that even if this municipality was correct, because part of their claim is that they did not pass an appropriations ordinance that would address this $800 or $850, therefore, that would not be subject to a pension. If they're correct in that and that they didn't pass the appropriations ordinance, it would not be the responsibility of the individual plaintiffs to do that. They're not responsible to pass an ordinance. They're not responsible to do anything to make the city do what it needs to do to ensure that they're compensated. So, in other words, we do have a collective bargaining agreement. Whether or not Judge Cohen's correct about the side letter, whether that's binding or not binding, we do know that Section 14.3 of the collective bargaining agreement is absolutely enforced. It would absolutely apply to these individuals. In our opinion, that side letter explains the intent of the parties, and as you're aware, the intention of the parties is absolutely important, particularly when we have a 10-year period of time that both parties understood and accepted what the contract meant. What Judge Rooney did in explaining why she dismissed the side letter argument is she said that the collective bargaining agreement itself contained what we all know as an integration clause. The collective bargaining agreement said this is the only contract, this is it, four corners, we're done. Nothing outside these four corners matters. And that collective bargaining agreement is what the city council adopted. The city council indisputably never adopted the side letter. Even if there was nothing else except for the collective bargaining agreement that existed, the individuals had a right to pursue what's in the collective bargaining agreement, and that would be that Section 14.3. And so if the city is right and they're not paying or they don't have to pay this $850 because of the appropriations ordinance that they didn't pass, the individuals would have a right to pursue it as a third-party beneficiary under the collective bargaining agreement under 14.3. But doesn't that only get you the $850 and not the $10,000? It doesn't because the language under 14.3 is absolutely ambiguous language. Judge Cohen, when he rendered his decision, added words to his order to explain to say that that $850 is an annual payment. That's not what the contract says. When you read Section 14.3, it discusses an $800 or $850 payment. It doesn't say annual. It doesn't say biweekly. It doesn't say any of these things. So the parties, the day after the collective bargaining agreement was reached, the parties sat down and said, wait a minute, we need to make sure that we explain this so that everybody understands it going forward. They wrote that side letter to make sure that there was no ambiguity because they recognized themselves that the contract itself was ambiguous. So regardless of whether that side letter is a contract or not a contract, the individuals have a right to pursue as a third-party beneficiary under 14.3 of that contract. Secondly, I'd like to emphasize the fact that the Illinois Constitution and the in-way pension legislation case came out during the course of this, which emphasized to us the importance of the fact that this is a contractual benefit that cannot be impaired. These individuals, some have been retired. By the time that case came out, some of these individuals had been retired for 12 years, and the city was asking to reduce their pension, something that they had been earning based upon a statute, based upon a collective bargaining agreement, based upon a decision by the pension board itself that they had been receiving a pension. The Constitution clearly allows them to maintain their right to receive that continued pension. Let me, on that point, you know, the city argues that cases like Kinnerva and all the cases following that are distinguishable because in those cases you were dealing with a specific piece of legislation that attempted to reduce an existing pension, and in none of those cases was the fact presented that the pension itself was miscalculated on day one. There's no miscalculation here. Well, let's assume for the sake of this hypothetical question, all right, that the city is right in that the DOI regulations govern and the pension was miscalculated on day one, right? Now you're giving us a defense saying you own a Constitution that says you can't change it even if it was wrong. If there was a miscalculation 10 years ago, those decisions would have to stand under the 35-day administrative review period. Their pension is their pension. If we look at any of the cases that deal with the administrative review on the pension matters, once that 35-day period is over, that individual that's receiving that pension does have a right to continue that pension, and that would include that $800 or $850. Any questions? Thank you, Counsel. Thank you, Your Honor. Ms. Thomas. May it please the Court, Counsel. Your Honor, I'd like to address two of the factual assertions that opposing counsel has made. First of all, they said that five different attorneys had opined that the longevity benefit, including the pension spike, was legal, and specifically talked about it to City Attorney Peck. So City Attorney Peck opined on two occasions about the $850 that was contained in Section 14.3 of the CBA. First, he opined in his January 23, 2002 letter about the $850 and that that was legal, that a one-time annual payment could be made to the individuals in a longevity benefit. But that contained nothing at all about the pension spike. So the $850 times the 24 or 26 pay periods. Second, Peck again, in his July 26, 2009 letter, did not address the pension spike at all. He only addressed the obligation to pay the $850 in Section 14.3. He also admitted during sworn statement at trial testimony that he did not address the $850, he did not address at all the $850 times 24 or 26 pay periods, but only the $850 alone. So Mr. Peck, the City Attorney, gave no testimony and has provided no letters whatsoever that address the pension spike at issue here. So what are you saying? Are you suggesting that the City didn't know that this was $850 times 24? I mean, I understand what Mr. Peck said, but what's the ultimate takeaway from what you're saying to us? So Section 14.3 in the CBA is the controlling body of evidence here. It is the only contract between the parties. And if you look at Section 14.3, it doesn't say anything, nothing about the 2002 side letter, nothing about multiplication or the multiplication set forth in the 2002 side letter. Therefore, it's completely unambiguous. All of the outside evidence that says people were aware of the negotiations or the proposals that had anything to do with multiplying that $850 in Section 14.3 against 24 or 26 pay periods is just that, extrinsic evidence. It's not included in the contract that governs here. So let me ask you, were these retirees getting pension based on the multiplier? They were, Your Honor. So what did the City think they were paying on? They were getting pension based on the multiplier, but you're claiming that you didn't know about the multiplier. That's true, Your Honor. So all of the funding requests were made in bulk funding requests. And so even with due diligence, they couldn't know that these additional amounts or the pension spike amounts were being paid to each of these 13 retirees. So they did not know. And until a new financial director came in and found out that this was happening, they were not aware that the City Clerk, Kathy Rothbard, was actually calculating this pursuant to Nick Setwinski's instruction times the 24 or 26 pay periods. Does the City have an obligation to know what they're paying? I mean, they're the ones that are writing the check. Isn't there some obligation to do an audit before 10 years have passed to find out what it is that you're paying? Well, Your Honor, there were a lot of safeguards in place here. And one of those safeguards is that an appropriations ordinance has to be passed for any amounts that are paid. The appropriations ordinance in this case only applied to the 850, that same amount, not the multiplication of 850 times 26 or 24 pay periods. So the City budgeted 850 for each of these increases and budgeted 10,000? Exactly. That's exactly right, Your Honor. Let me move you, if I can, to a different aspect. You respond to counsel for the Pension Board focused a lot of his time about the issue of the tax levy. And the record seems to indicate that the City has, in fact, been funding the Pension Board. It's a matter of difference of opinion as to, A, whether or not the actuarial calculation should include or exclude the pension spike, and, B, whether the source of the money is tax levy or some other source. Yes. All right. So the assertion, the City's position is that the assertion in the counterclaim, the very plain assertion that says the City is not giving us a dime is not correct and is not supported by the record. That's true. Okay. So, Your Honor, in fact, Kathy Rothbard, the clerk of the City, was calculating the pension spike as well as the deserved 850 for each of these retirees through 2009. When the City filed suit in 2012, we stopped paying the pension spike. Did somebody say shifted actuaries or actuarial instructions? We stopped paying, the City stopped paying the pension spike portion, not the portion, the 850 deserved portion. We stopped paying that pension spike portion in 2012 based on actuarial opinions looking at all of this and in light of the Department of Insurance's opinions that this was actuarially unsound. So there was at some point an audit when the Department of Insurance came in and said it was a violation. There was. So, in fact, Your Honor, it was in 2004. So the pension board knew as of 2004 that the Department of Insurance said that this was both contrary to the pension code, the way it was being calculated, and it was actuarially unsound. In this lawsuit, Yes. or simply you're asking for relief going forward. We're asking only for relief going forward. And, in fact, the case law allows us to claw back to when we filed suit, the declaratory judgment suit in 2012, but we are asking only for this to stop as of the time of Judge Cohen's March 28, 2017. Your Honor, let me ask you to address the stage limitations argument. Okay. We have five or six limitations on general civil actions. Yes. And the other side makes a lot of strong arguments that the city, just because it didn't do anything in court until after five years had passed, as to almost every officer in this group, that the city is without a remedy. Well, the discovery rule is applicable here, Your Honor. So the city, as I said, was not aware until beginning in 2009 when it began an investigation looking into actually Chief Swanson's retirement. But isn't the city charged with knowledge of itself? Yes. I mean, the city may have changed politically. It's pretty clear from the record. Yes. Something happened in the city. You know, you get a new mayor, a new attorney, a new labor person, et cetera. But the city is the city. Yes. That doesn't change because the officials change. Yes. Okay. So shouldn't the city know about its own finances? And you said that they, that the defendants knew as early as, what did you say, 2005? So wouldn't you be charged with that there was an issue because the Department of Insurance had issued a letter? So wouldn't you be charged with the same knowledge, thereby at least alerting you to the fact that something is up, so maybe you should do something? And that was well before you filed your, before anything happened in 2012. I want to make sure I address both of your questions. Yes. So first of all, it's true that in 2004, the Department of Insurance notified only the pension board that the calculation for the spike was actuarially unsound and contrary to the pension code. Unfortunately, the pension board did not share that with the city, so the city was completely unaware of that, and that has been confirmed by the city. Until 2010, when an advisory opinion letter was requested by the city, there were no communications prior to that with the city about the pension spike issues and the fact that they were actuarially unsound and against the pension code. Second, as I was talking about before, yes, the city does need to know where its money is going, and for that reason, there were lots of safeguards in place, including that if something is not appropriated for, it cannot be paid. And the only thing that was appropriated for here was the 850, not the pension spike amount, not that additional, you know, $10,000 per individual. So under Illinois law, under Barbara Smith and Chicago Ridge, this pension spike is not legal and cannot be paid to these retirees. It's illegal under the pension code. But it was being paid for a period of time, wasn't it? So it was paid without the city's knowledge for a period of time. We're going in circles here because that brings us back to the question of doesn't the city know its own finances and what they're paying for? So the city never approved the longevity benefit here. The city never voted on it. It was never even a proposal. This was a fraudulent side letter that was used to Well, that's not what they say, but anyway. That's not what they say, Your Honor. But it was a fraudulent side letter. And, in fact, Mr. Sentrenski and other attorneys with the city know how to pass resolutions where they attach them to the CBA. This is the argument that this is troublesome. The city has no obligation to know what it's paying for. And if it pays mistakenly over a period of time, it has no responsibility for that? I mean, municipalities are required to monitor their finances, right? I mean, the city was paying for this over a period of time, and now you're saying, well, we shouldn't have been. And I'm trying to understand, like, the basis of why do you think that that's okay? So, Your Honor, the reason that that's okay is because all the city approved, all the city voted, and all the city passed was Section 13.3 of the CBA. That is the sole basis under which these parties negotiated and spoke to each other. While the 2002 side letter was a proposal, it was never actually proposed to the city council to vote on. Somebody somewhere in the city thought it was okay because they were making statements based on that. No, no, Kathy Rothbard is just a clerk who made a systemic miscalculation by using the 2002 side letter, which she was told to do by Mick Setlinski, who was the attorney for the city at the time. But there's a signature on the side letter by an attorney who was representing the city. He did not have authority to enter into the side letter, and that's why it was never voted on. While it was a proposal that was discussed during negotiations, it was never actually adopted. It was never approved by the city council. And therefore, there was no appropriations ordinance that ever said this amount should be paid. Thus, it's illegal. Let me go on a tangent here. There was a juvenile practice case that went to the jury trial and law division. Yes. Brought by the city against some or several attorneys. Yes. All right. Did the lack of authority of that signature come up, or was it simply that they gave bad advice? What was the claim? Was it related to you signed this without authorization and therefore subjected us to all this money, or was it you just gave us bad advice about whether the pension spike was legal or illegal? It was both, Your Honor. Okay. So the lawsuit against Mick Setlinski, the city attorney, was that he didn't have authority to bind the city with regard to the 2002 side letter, that the 2002 side letter was created out of fraud, and that his advice to the city later, after the 2002 side letter, still saying that this was fine under the pension code to pay this spike was wrong and malpractice. So, Your Honor, as I said, the pension spike is illegal under the pension code. It violates the pension code because there was no appropriations ordinance for it. In addition, that 850 times the 2426 pay periods, which results in $20,400, was never actually paid to the officers, and it was never actually received by the officers. It was actually fictitious pretend money, like monopoly money. Because it was never paid or received, no contributions were made out of those monies to the pension code. You can't take money out of the pension code to pay officers when they haven't contributed to it, and the city hasn't contributed to it. For that reason, it's illegal under the pension code. The pension code requires that there be an appropriations ordinance. We don't have that. It requires that the money for the longevity benefit, so this spike amount of $20,000, be both paid and received. Neither of those happened. It was pretend, fictitious money. And then it also requires that based on that money that was paid or received, that the proper contributions be made to the pension fund. Here, those contributions were not made. Ms. Thomas, let me grant you a couple more minutes, and then I ask you to close. Thank you so much. Finally, with regard to the Department of Insurance, as early as 2004, which we spoke about the pension fund, the pension fund became aware that the Department of Insurance was saying that it was actuarially unsound and against the pension code to continue to make these pension spike payments. The pension board never shared that with the city. Second, there was a 2010-2010 advisory opinion saying that, again, it was actuarially unsound and against the pension code. And finally, a 2014 audit, which again found that these pension spikes are illegal under municipal law and also the pension code. For these reasons, Your Honor, the circuit court's March 28, 2017, order should be affirmed. Thank you. Thank you, Ms. Thomas. Mr. Bradshaw, reply. Thank you. I'd like to address a couple of things that counsel for the city brought up. They said they'd never appropriate for the longevity benefit. It's just simply not true. You have the appropriation order at 4991 where they say they're going to provide appropriate funding through the budgetary process and shall be provided for by the city council for said longevity increases. At the time they passed that ordinance, as I mentioned, they had a lengthy memorandum from their city labor attorney who had expressed authority to act on their behalf that laid out exactly what the longevity increase meant. And it shows right in there. We're going to pay each retiree $10,200, and we're going to save $655,000. I didn't quite say that. It said they were going to pay me $50. You can compute it as $10,500. Well, if you look at the memorandum from their city labor attorney, it says 4861. It says retiree longevity increases. Estimated minimum annual cost to the pension fund, $10,200 per retiree. Estimated payroll savings to the city, $655,000. This was in April of 2002. While the negotiation was going on, before they approved the appropriation ordinance, saying we're going to approve the $850 appropriation ordinance, the city's claim that we don't know what's going on with our pension fund is ridiculous. There was longstanding negotiations. They had two members that sit on the pension fund, one of which in 2007 was their city administrator, Ms. Paul. She had a legal opinion in 2009 from both their city attorneys, saying, hey, I'm about to vote on a pension increase. What's your opinion on it? In 2009, they both said it's permissible. And I can cite you the record there. Also in 2004, when the chief was retiring, he said, hey, am I going to get this longevity increase? Oh, we're scuttlebutt around here. Their city attorney gave another legal opinion, saying, yes, you're entitled to it. This pension fund cannot violate what we bargained for at the bargaining table to give this benefit. They cannot not provide it. It would be violation of law for them to do it. The chief wasn't in the bargaining unit, though, was he? I believe he did sit at some of the negotiations. Well, he wasn't in the bargaining unit. I mean, the whole point is to be in the side letter. Correct. It only affects the members of that union. No. You have one contract for patrol officers. You've got a second contract for sergeants. You don't have a contract for a chief, right? When you look at what they appropriated for, that 4991, they say the chief and the deputy chief are included. There may be an appropriation, but I think that they would be in the side letter. Again, if you're honest, the side letter, really you could put that aside. The pension board didn't need the side letter to grant this benefit. Everyone knew what the intent of 14.3 was. When you look to the CBA, it's ambiguous. For anyone to look at that and say it's unambiguous, there wouldn't be a need for a side letter. There wouldn't have been a need for all this explanation by their city attorney if it was clear on its face. It's absolutely not. That's why you have to look to extrinsic evidence, and it's crystal clear. There's admissions all over the place by the city that they understood what this benefit was about. The claim that, you know, we didn't know, we just turned over money to the pension fund is a breach of their fiduciary responsibilities, A, and B, that's what they're charged to do is to know what the law is and what they're paying for. And they certainly did. It would be crazy to think that for almost a decade they were paying with total reason, you know, they were approving annual longevity benefits, I'm sorry, annual levy requests without knowing what those include. It's just simply not true. They knew what it was. Mayor Conrad sat at the negotiation table on behalf of the city. He was on the police committee. He's all over the paperwork here from their city attorney and labor attorney explaining what 14.3 means. How do you respond to the fact that the letter was never approved? I don't see anywhere in the law where it requires memorialization of the intent by the client. Lack of what? Lack of approval. Lack of approval of the side letter. How do you respond to that? The side letter is simply memorializing the intent of 14.3. There's no way that requires that they approve the CBA knowing what the intent is. So to approve what their city attorney who had expressed authority to sign off on it, as Justice talks about, there's no need to do that. They've already given their attorney the express authority to speak on their behalf. He signed off on it. And again, it doesn't need to be approved by any ordinance. I don't see any law that requires in order to provide that benefit, you have to sign off on something that memorializes the intent of the provision. That's all this was doing was saying, hey, because the language may not be clear to everybody, let's memorialize what 14.3 says. And that's what they did here. Let me ask you to close, please. Okay. Thank you. You have, again, two opinions from the general counsel, two opinions from the labor attorney, all saying this is a legal benefit and that it would be a violation of the law to ignore what was bargained for in exchange here regarding this benefit. The pension board did what their fiduciary obligations was to look at the statute, to look at what was agreed upon between the employees and the city here, and to determine pensionable salary, which is their job to do. It's a permissible longevity benefit. Everyone understood that the 850 was appropriate. I'd implore the court to look at Barba versus Bensonville. Again, realizing it's a second district case, but that case is right on point. There was an internal government agreement that said we're giving $320 as a longevity benefit. The city said if you do find in favor of the individuals or the pension fund, all they get is $320. That's what the benefit was provided. That's not what Barba held. They said, no, the internal government agreement was real clear. The payment on the last check is what the statute allows. And as long as that amount is appropriated for, permissible under the statute, this is no different than a pay raise given to an employee. He gets a raise on May 1st. He gets his first check with respect to that annual increase, and then he retires. He doesn't receive a full year's salary in order to receive the increased pension benefit. He pays contributions on the last check of his payroll, which happened here. They appropriated for it. Contributions came in, which by the way, 3-125.1 that the IDOI and the city is relying upon talks about what is the contributions the individual has to pay. As long as it's appropriated for and that's paid for by the individual, that counts pursuant to the statute. So we'd ask that you reverse for arguments set forth here today as well as those I set forth in my brief. I'd ask that you reverse the decision of the circuit court and find that the longevity benefit was permissible. Thank you. Thank you. Mr. Casatera? You waive reply with that being the case? No. Then the court will take the matter under advisement. Thank you for your attention and your participation.